IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUIS A. APONTE SANTIAGO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART | : | |
| Commissioner of Social Security | : | NO. 04-5247 |

REPORT AND RECOMMENDATION

JACOB P. HART                                                                DATE:  July 6, 2005
UNITED STATES MAGISTRATE JUDGE

  Luis A. Aponte Santiago brought this action under 42 U.S.C. § 405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for supplemental security income ("SSI"). The parties have filed cross-motions for summary judgment. For the reasons that follow, I recommend that the Commissioner's motion be granted and Aponte's denied.

I.  Factual and Procedural Background

  Aponte was born on June 4, 1977. Record at 107. He has a twelfth-grade education. Record at 163. His past relevant work included jobs as a construction worker, a packer in a factory, a short-order cook and a grinder in a chicken plant. Record at 29-31.

  On February 20, 2002, Aponte filed this application for SSI claiming disability since April 12, 1999, as a result of a 1998 gunshot wound to his left, non-dominant, arm. Record at 107, 157. His application was denied by the state agency. Record at 54. Aponte then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 52.

  A hearing was held in this case on October 15, 2003. Record at 24. At that point, Aponte also asserted a mental impairment. However, on October 30, 2003, the ALJ issued a decision finding that Aponte was not disabled. Record at 16. The Appeals Council then denied

Aponte's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 3. Aponte subsequently filed this action.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> The sequence is essentially as follows: (1) if the claimant is currently engaged in substantial gainful employment, she will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," she will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and it has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether she can perform work she has done in the past despite the severe impairment - if she can, she will be found not disabled; and (5) if the claimant cannot perform her past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether she can perform other work which exists in the national economy. See id. § 404.1520(b)-(f).

Schaudeck v. Commissioner, 181 F.3d 429, 431-432 (3d Cir. 1999); 42 U.S.C. § 423(d)(2)(A).

III.   The ALJ's Decision and Aponte's Motion for Summary Judgment

The ALJ found that Aponte suffered from the severe impairments of post-traumatic stress disorder and "post left median and radial nerve neurolysis [destruction of nerve tissue]" of his left arm. Record at 18, Dorland's Illustrated Medical Dictionary, 28th Ed. (1994) at 1130. He found, however, that these impairments did not meet or equal a listing. Record at 21, ¶ 2. He also found Aponte's allegations regarding the extent of his limitations not to be entirely credible. Record at 21, ¶ 3.

The ALJ determined that Aponte retained the RFC to perform light work, limited in the following respects:

> [T]he claimant is unable to communicate in the English language, is unable to perform overhead work, is mildly to moderately limited in grasping with his left hand and is right hand dominant, is able to use his left upper extremity frequently but not repetitively, has mild to moderate limitations in concentration and attention due to pain and has mild to moderate difficulties interacting with others.

Record at 22, ¶ 5. Based on the testimony of a vocational expert who appeared at the hearing, the ALJ found that work existed which Aponte could perform, principally as a machine tender in a factory. Record at 22, ¶ 11. He concluded on this basis that Aponte was not disabled. Record at 22, ¶ 12.

In his motion for summary judgment, Aponte maintains that the ALJ incorrectly found that he did not meet or equal a listing, and wrongly found that he retained the RFC to engage in light work.

IV.     Discussion

A.      Aponte's Impairment of the Left Arm and Hand

It is quite clear from the medical record that Aponte has sustained nerve damage to his left arm. In the most recent note in the file, dated May 7, 2002, his treating surgeon, Dr. Randall W. Culp of the Philadelphia Hand Center, wrote that Aponte was: "status post gunshot wound of the left humerus and IM rod and radial and median nerve neurolysis and tendon transfers" causing pain in the shoulder, and decreased sensitivity in the thumb, index and long fingers. Record at 182.

Nevertheless, Dr. Culp did not report that the arm or hand were entirely incapacitated. Aponte's shoulder showed forward flexion of 180, and abduction of 160, which are both greater than the normal degree of 150. Record at 182, 217. There was no sign of "impingement", presumably impingement on a nerve, which would have caused pain. Record at 182. Aponte could also flex his hand to the distal palmar crease, and oppose his thumb to the fifth metacarpal head. Record at 182.

On June 5, 2002, Aponte was examined by Harold Einsig, M.D., an agency consultative physician. Record at 208. At that time, Aponte, who is six feet two inches tall, weighed 220 pounds. Record at 209. Dr. Einsig reported decreased mobility of the left arm and hand, particularly a lack of pronation ability in his thumb, as well as sensory loss. Record at 210. However, the other fingers on Aponte's left hand had a full range of motion. Id. Moreover, Aponte was otherwise physically normal. Record at 209-210.

Despite his impairment, Dr. Einsig found that Aponte could occasionally lift up to 25 pounds with his left arm, and that, with his right arm, he could frequently lift 25, and occasionally lift 50 pounds. Record at 213. Otherwise, Aponte was limited only by his lack of ability to abduct his left thumb or fully flex his thumb and index finger, and by his inability to engage in overhead work. Id.

On the basis of this medical evidence, the ALJ found that Aponte failed to show the gross anatomical deformity or inability to perform fine and gross movements, which are required to meet Listing 1.00 (Musculoskeletal System). When the definitions set forth in the listing are considered, it is clear that this finding is accurate. The inability to perform fine and gross movements "effectively means an extreme loss of function of both upper extremities." 1.00B2c. Clearly, Aponte was impaired in only one upper extremity. Moreover, "gross anatomical deformity" must result in the "involvement of one major peripheral joint *in each upper extremity*." 1.02B. (Emphasis supplied).

Again, because Aponte is limited in only one extremity, the ALJ was correct in finding that he lacked the significant neurological deficits required under Listing 11.00 (Neurological). In Aponte's case, this would have meant "significant and persistent disorganization of motor function in two extremities." 11.14, 11.04B.

Therefore, Aponte's physical impairment did not meet a listing. What is more, the medical evidence – critical parts of which are discussed above – supports the RFC arrived at by the ALJ. Although Aponte argues that Dr. Einsig's findings preclude him from performing light work, Dr. Einsig actually found that Aponte could do more than this. Light work requires the lifting of only ten pounds frequently and 20 pounds occasionally. Record at 22. Dr. Einsig, as

noted, found that Aponte could occasionally lift 25 pounds with his left arm, and up to 50 with his right. Record at 213. No medical source has found that Aponte could do less.

Further, Aponte testified at the hearing that he was not currently receiving any medical care for his arm (although he did say that this was because he no longer had medical benefits). Record at 33-34. He was taking no prescription medicine for pain. Record at 39. In sum, there is no basis upon which to challenge the ALJ's RFC assessment with respect to Aponte's physical impairment.

B.  Aponte's Mental Impairment

Aponte did not originally include a mental impairment as part of his application for benefits. On September 14, 2002, however, he was evaluated at New Directions Treatment Services. Record at 269. He was noted to suffer from a depressed mood, anxiety, worry, tension, decreased concentration, irritability, impulsivity, sleep problems and aggression. Record at 270. He was, however, adequately dressed, oriented, cooperative, goal-directed in thought process, and free from psychosis. Record at 273. He made good eye contact and had normal speech. Id.

Aponte's examiner assigned him a GAF score of 61, which is indicative of only mild symptoms. Record at 274; Diagnostic & Statistical Manual of Mental Disorders ("DSM-IV"), 32-35 (4th ed. 1994). However, Aponte was diagnosed with post-traumatic stress syndrome (referring to his 1998 shooting) and prescribed Effexor and Ambien. Record at 277. This was later switched to Effexor and Klonopin, since Aponte's insurer would not cover Ambien. Record at 279.

In his motion for summary judgment, Aponte points out that on October 6, 2003, a psychiatrist at the same service assigned him a GAF score of 50, which indicates serious symptoms. Record at 267. About this, the ALJ wrote: "As for the medical opinions, little weight is given to an October 2003 global assessment of functioning of 50 since it understates the claimant's mental abilities as supported by the limited clinical findings and the fact that he reported improvement with medication." Record at 19.

This observation is supported by substantial evidence. There is no record of a deterioration in Aponte's mental health since his initial evaluation. In October, 2002, Aponte reported no response to Effexor, and the dose was increased. Record at 279. However, in November, 2002, he reported a good/limited response. Record at 281. The next note in the file is from July, 2003. Record at 262. At that time, Aponte reported a good response to medication, and that he was feeling better. Record at 262-263. Similarly, Aponte stated that he was feeling good in August, 2003, and his response to medication was reported to be good. Record at 264, 265. Even in October, 2003, when the GAF of 50 was assigned, Aponte's mood was said to be "a bit somber, but generally good", and his response to medication was reportedly good. Record at 267-268.

The ALJ concluded that Aponte suffered from only "mild restriction in the activities of daily living, mild to moderate difficulties with social functioning, mild to moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation." Record at 19. He found, therefore, that Aponte's mental impairment did not meet the stringent "A", "B" or

"C" criteria of Listing 12.06, Anxiety-Related Disorders.[1]  This conclusion was supported by the substantial evidence outlined above.

Similarly, Aponte's medical records support the ALJ's decision that his mental impairment is adequately accommodated by limiting him to work suitable for one with "mild to moderate limitations in concentration and attention due to pain and has mild to moderate difficulties interacting with others."  Record at 22, ¶ 5.  Accordingly, I cannot identify any error in the ALJ's RFC determination regarding Aponte's mental condition.

3.      SSR 96-6:  The Need for a Medical Expert

Aponte also maintains that the ALJ erred in failing to consult a medical expert on the issue of whether his impairments, or combination of impairments equaled a Listing.  Indeed, this is required by Social Security Regulation 96-6p where the question of equivalency is "fairly raised" by the medical record.  Maniaci v. Apfel, 27 F. Supp.2d 554, 557 (E.D. Pa. 1998); Honeysucker v. Bowen, 649 1155, 1158 (N.D. Ill. 1986).

Here, however, the issue is not fairly raised.  As discussed above, Aponte did not come close to meeting a listing based on the injury to his left arm, because the relevant listings required the impairment of two extremities.  Moreover, there was simply no evidence that Aponte's mental impairment caused him marked limitations in any area required to meet a listing.  For that reason, the ALJ did not err in failing to consult a  medical expert.[2]

---

[1] These criterial required anxiety symptoms resulting in either (1) the complete inability to function independently outside the are of one's home, or (2) two of the following:  (a) marked restriction of activities of daily living; (b) marked difficulties in maintaining social functioning; (c) marked difficulties in maintaining concentration, persistence and pace; or (d) repeated episodes of decompensation, each of extended duration.  12.06A, B and C.

[2] I note, however, that the Commissioner is incorrect in arguing that the presence of a Disability Determination and Transmittal Form in the file obviated the need for a medical expert.  In this case, the form was signed only by a disability examiner.  Record at 46.  SSR 96-6p *specifically* requires a "physician."

V.	Conclusion

In accordance with the above discussion, I make the following

### **R E C O M M E N D A T I O N**

AND NOW, this      6TH     day of  July       , 2005,  it is RESPECTFULLY RECOMMENDED that Plaintiff's motion for summary judgment be DENIED; and it is further RECOMMENDED that Defendant's motion for summary judgment be GRANTED.

BY THE COURT:

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUIS A. APONTE SANTIAGO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART | : | |
| Commissioner of Social Security | : | NO. 04-5247 |

O R D E R

STEWART DALZELL, J.

AND NOW, this         day of                    , 2005, upon consideration of the Plaintiff's Motion for Summary Judgment, and the Defendant's Motion for Summary Judgment, and after careful review of the Report and Recommendation of United States Magistrate Jacob P. Hart, IT IS ORDERED that:

1. The Report and Recommendation is APPROVED and ADOPTED.

2. The Plaintiff's Motion for Summary Judgment is DENIED.

4. The Defendant's Motion for Summary Judgment is GRANTED.

BY THE COURT:

_____
STEWART DALZELL, J.